**MARS EMERGENCY MEDICAL SERVICES, INC., Appellant,**

v.

**TOWNSHIP OF ADAMS and Borough of Callery.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.

Decided Jan. 7, 1998.

Michael J. Betts, Pittsburgh, for appellant.

James A. Taylor, Butler, for appellee, Township of Adams.

Cynthia Sychak-Berry, Butler, for appellee, Borough of Callery.

Before COLINS, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Mars Emergency Medical Services, Inc. (Mars EMS) appeals from an order of the Court of Common Pleas of Butler County (trial court) granting the motions for summary judgment filed by the Township of Adams (Township) and the Borough of Callery (Borough), (together, the Municipalities), and dismissing the complaint filed by Mars EMS. In the complaint, Mars EMS sought equitable relief in the form of a determination that the Municipalities' designation of

Quality Emergency Medical Services, Inc. (Quality EMS) as their primary provider of emergency medical services was void, and Mars EMS sought to preliminarily and permanently enjoin the Municipalities from designating any primary provider of emergency medical services in their area. (R.R. at 7a–16a.)

Mars EMS is a non-profit corporation and provider of emergency medical services, licensed by the Pennsylvania Department of Health (Department) pursuant to the Emergency Medical Services Act (Act 45), Act of July 3, 1985, P.L. 164, *as amended*, 35 P.S. §§ 6921–6938. In the license issued to Mars EMS, the Department specifically identified the Municipalities as "primary response areas" for which Mars EMS is responsible for providing emergency medical services.[1] (R.R. at 20a.) The Township and the Borough are municipal corporations subject to The Second Class Township Code[2] and The Borough Code[3] respectively.

In July of 1994, the Township adopted a resolution designating Quality EMS, another provider of emergency medical services licensed to provide emergency medical services to the Municipalities, as its primary provider of emergency medical services. The Borough adopted a similar resolution designating Quality EMS as the Borough's primary emergency medical service provider in August of 1994. Thereafter, the Municipalities notified the Butler County Communications Center, Butler County's 9–1–1 operator, of these designations.

According to Mars EMS, the designations effectively eliminate Mars EMS as a provider of emergency medical services to residents in the Municipalities because the 9–1–1 operator now dispatches Quality EMS in response to virtually all 9–1–1 requests from residents of the Municipalities, rather than equitably rotating these 9–1–1 calls between Mars EMS and Quality EMS. As a result, Mars EMS commenced an equity action for injunctive relief on December 20, 1994, claiming that the Municipalities' designations were void because they conflict with, and are preempted by, Act 45, and because the Municipalities exceeded the powers granted to them under The Second Class Township Code and The Borough Code in making the challenged designations.

Subsequently, Mars EMS filed a motion seeking a preliminary injunction, and, on January 13, 1995, the trial court, Judge Thomas J. Doerr, held a hearing on the matter. The parties agreed to have Judge Doerr consider the issue of whether the Municipalities have the power, either under Act 45 or under The Second Class Township Code or The Borough Code, to designate a primary emergency service provider for their residents.[4] Following the hearing, Judge Doerr denied Mars EMS's motion for a preliminary injunction. Mars EMS appealed to this court, and we affirmed the denial in an opinion dated April 18, 1995.

On November 7, 1995, Mars EMS filed a praecipe for a trial date on its action for permanent injunction. At a pre-trial conference on August 30, 1996, each of the Municipalities presented a motion for summary judgment. Although Mars EMS acknowledged that the motions for summary judgment, if granted by the trial court, would resolve the case based on issues of law, (R.R. at 142a), Mars EMS took the position that the trial court should take additional testimony.

---

1. The regulations promulgated by the Department define "primary response area" as

 [t]he specified geographic area assigned to a licensed ambulance service that then has the responsibility for the provision of prehospital emergency medical care and transportation in the area. Primary response areas are determined by regional EMS council plans, according to factors such as the location of ambulance resources, ambulance response times and area population. A primary response area designation is not intended to be an exclusive designation.

 28 Pa.Code § 1001.2.

2. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

4. Assuming such power was found to exist, the parties agreed to reserve for another day the question of whether that power was properly exercised. (R.R. at 38a–39a.)

By order dated April 11, 1997, the trial court, Judge George H. Hancher, granted the Municipalities' motions for summary judgment. Judge Hancher reasoned that when Judge Doerr denied the preliminary injunction, he held that neither The Second Class Township Code nor The Borough Code precluded the Township and Borough respectively from designating the primary medical emergency providers for their municipalities; further, Judge Doerr held that nothing in Act 45 prohibited local authorities from designating a primary care provider for their citizens. Noting that these holdings were affirmed by this court on appeal, Judge Hancher determined that it was Commonwealth law and the law of the case that the Municipalities' actions were proper; therefore, there was no legal basis to grant relief to Mars EMS.[5] Mars EMS now appeals to this court, arguing that the trial court erred in granting the Municipalities' motions for summary judgment.[6]

■ First, Mars EMS argues that the trial court erred in granting summary judgment because of the procedural status of the case when the motions were granted. Mars EMS points out that the trial court based its grant of summary judgment on the determi-

nations made in connection with the preliminary injunction proceeding. However, according to Mars EMS, because the case was only in the preliminary injunction stage, any factual "findings" or legal "conclusions" made in connection with those proceedings are not entitled to collateral estoppel or res judicata effect. Indeed, Mars EMS asserts that, because of the extremely limited nature of preliminary injunction proceedings, this court has recognized that it "is improper for a trial judge to treat a hearing on a preliminary injunction as a final hearing on the merits and as a basis for a permanent injunction, unless so stipulated by the parties." *Riverside School Board v. Kobeski*, 146 Pa. Cmwlth. 106, 604 A.2d 1173, 1176 (1992). Mars EMS notes that it specifically sought a trial on its request for permanent injunctive relief and, thus, must be given an opportunity to present additional evidence to support its request for a permanent injunction in a final hearing on the merits.

We see no merit in Mars EMS's argument because this case turns on a matter of law rather than any question of fact.[7] Here, prior to the preliminary injunction hearing, the parties agreed that the trial court would rule in that proceeding on the legal issue of

5. After determining that the Municipalities could designate a primary emergency medical services provider, the trial court also determined that the Municipalities did not act improperly in selecting Quality EMS as that primary provider.

6. A trial court may properly grant summary judgment when the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The motion for summary judgment encompasses two concepts: (1) the absence of a dispute as to any material fact, so that there is no issue to submit to a jury; and (2) the absence of evidence sufficient to permit a jury to find a fact essential to the cause of action or defense. *See* Pa.R.C.P. No. 1035.2. Summary judgment should be granted only in those cases where the right is clear and free from doubt. *Ducjai v. Dennis*, 540 Pa. 103, 656 A.2d 102 (1995).

7. Nor can we agree with Mars EMS's reliance on *Kobeski*. In *Kobeski*, a school board removed one of its elected members because of a misdemeanor conviction and appointed another person to fill the vacant seat. The unseated board member filed a complaint in equity requesting the court to void the board's action and reinstate him to his board position. Subsequently, the

ousted board member filed a motion seeking a preliminary injunction, and a hearing was held at which the court heard testimony regarding the merits of the removal. The court then issued an order immediately reinstating the board member and declaring the board's actions null and void.

On appeal to this court, the board argued that the court erred, both in taking testimony on the merits of the case and in issuing an order that was actually a permanent, rather than a preliminary, injunction. We concluded that the court did not err in hearing testimony on the merits of the case because this evidence was relevant to the question of whether the movant's right to relief was clear, that is, that there was a reasonable likelihood of success on the merits. We did, however, determine that the court improperly used the preliminary injunction hearing as the basis for a final decree permanently enjoining the action. That is not this case.

Here, the trial court denied Mars EMS's preliminary injunction based on, among other things, its inability to get relief as a matter of law. This denial was affirmed on appeal and, in considering the Municipalities' motions for summary judgment, the trial court used that legal determination as part of the basis for granting the motions.

whether the Municipalities had the power to designate a primary emergency medical services provider. In fact, at the pre-trial conference, Mars EMS appears to agree that resolution of this legal question would determine the outcome of the case. Under such circumstances, where Mars EMS cannot succeed in its action as a matter of law, the introduction of further factual evidence would serve no purpose.[8]

As to the merits of its action, Mars EMS first contends that, given Act 45's comprehensive regulatory framework, Act 45 either: (1) preempts local regulation of emergency medical services; or (2) prohibits the Municipalities' designations as interfering with the coordinated, unified system of emergency medical services established by Act 45. We disagree that the Municipalities' actions can be deemed invalid under either of Mars EMS's theories.

■ With regard to preemption, Mars EMS contends that the action of the Municipalities, i.e., designating Quality EMS as the primary provider of emergency medical services, conflicts with the comprehensive regulatory scheme of Act 45, which clearly makes the Department responsible for deciding who is qualified to provide emergency medical services and for coordinating the provision of such services among licensed providers. Mars EMS concedes that Act 45, on its face, does not forbid local legislation, but asserts that a fair reading of Act 45 shows an intent on the part of the legislature to comprehensively and exclusively regulate providers of emergency medical services. *See Duff v. Township of Northampton,* 110 Pa.Cmwlth. 277, 532 A.2d 500, 503–04 (1987), *aff'd,* 520 Pa. 79, 550 A.2d 1319 (1988) (quoting as the test for preemption, "Either the statute must state on its face that local legislation is forbidden, or 'indicate[ ] an intention on the part of the legislature that it should not be sup-

plemented by municipal bodies.'") We cannot agree.

Although Act 45 sets forth a comprehensive regulatory and licensing scheme for emergency medical services within Pennsylvania, Act 45 does not mandate that the Department regulate every conceivable aspect of emergency services, but, rather, gives the Department discretion to promulgate regulations *as may be necessary.* Section 17.1 of Act 45, 35 P.S. § 6937.1; *Community Life Support Systems, Inc. v. Department of Health,* 689 A.2d 1014 (Pa.Cmwlth.1997). Indeed, a review of Act 45's language clearly indicates that it does not intend to completely exclude the involvement of local governments when it comes to regulating services for their constituents. Section 2(b) of Act 45, 35 P.S. § 6922(b), expresses the intent of the General Assembly as it pertains to Act 45. Subsection (3) of that provision states: "It is the intent of the General Assembly that the Secretary of Health, in developing a stratified system of trauma care, shall, whenever feasible, involve local citizens in the decision-making process." 35 P.S. § 6922(b)(3). Thus, far from prohibiting local involvement, the legislature clearly encourages such involvement if it does not conflict with the provisions of Act 45.

■ Mars EMS claims that the Municipalities' designations conflict with the coordinated, unified system of emergency medical services established by Act 45. Mars EMS notes that, because the Department has assigned the Municipalities as "primary response areas" for Mars EMS, the Municipalities' designations, which effectively exclude Mars EMS from servicing these areas, directly interfere with the Department's own efforts to coordinate service in the area. However, based on our decision in *Community Life,* we disagree with Mars EMS that

8. Mars EMS notes that, although at the preliminary injunction hearing, the parties agreed to proceed solely on Mars EMS's theories involving the Municipalities' lack of power to designate a primary emergency services provider, they specifically reserved for future proceedings the question of whether, assuming such power existed, the Municipalities properly exercised this power by designating Quality EMS as that provider. Based on this agreement, Mars EMS contends

that it was entitled to present evidence as to the Municipalities' improper exercise of power. We disagree. In order to prevail, Mars EMS would have had to allege that the Municipalities' designation of Quality EMS constituted an abuse of discretionary power detrimental to the public. Mars EMS presented no such claim; thus, as a matter of law, it is not entitled to the equitable relief requested. *See City Council of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320 (1986).

the Municipalities' designation of a primary emergency medical services provider conflicts or interferes with Act 45.

In *Community Life*, we considered the Department's role in regulating the manner and means of dispatching emergency medical services within a region where competing providers were involved. After considering various provisions of Act 45,[9] we determined that the Department's responsibilities under Act 45 did not include establishing which emergency medical service providers would be dispatched in response to particular calls or designating which provider was appropriate for dispatch in a given situation. Further, we concluded that membership in the "unified statewide system" of emergency medical services developed by the Department does not guarantee that a provider receive a pro rata share of calls for emergency medical service. *Community Life.*

With this in mind, we point out that Quality EMS, like Mars EMS, is a licensed provider of emergency medical services, with the Township and the Borough assigned as two of its "primary response areas," making it an appropriate provider for the area. Moreover, the Municipalities have not eliminated Mars EMS as a provider in their communities; Mars EMS is still dispatched in response to 9–1–1 calls when it is specifically requested or when Quality EMS is unavailable. (R.R. at 11a, 52a.) It is no doubt true that Mars EMS may be sent on fewer calls than Quality EMS as a result of the Municipalities' designation of Quality EMS as their primary provider. However, in making this designation, the Municipalities have neither usurped the Department's role, nor interfered with the Department's coordinated scheme allowing Mars EMS to operate in that geographic area.

 Finally, Mars EMS argues that the Municipalities have only the power and authority granted to them by enabling legislation and that the designation of Quality EMS as their primary provider of emergency medical services was void as beyond the powers

granted to the Municipalities by the General Assembly in The Second Class Township Code or The Borough Code. Again, we disagree.

Admittedly, neither of the respective Codes specifically authorizes the Township or the Borough to designate a primary emergency medical service provider; however, the Codes do not prohibit such action. In fact, section 1527 of The Second Class Township Code provides the Township supervisors with general authority to act to secure the safety of persons within the Township, 53 P.S. § 66527, and Township Code section 1528 also vests in the Township supervisors the power to contract for and appropriate moneys toward ambulance and rescue and life saving services for the Township. 53 P.S. § 66528. Similarly, section 1006 of The Borough Code grants the Borough Council the general power to enact rules and regulations, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the Borough. 53 P.S. § 46006(3). Because the Municipalities' actions, taken pursuant to the general grant of power provided by their respective Codes, are not preempted by, or in conflict with, Act 45, Mars EMS cannot prevail on this argument.

In sum, we conclude that the trial court acted properly in granting summary judgment here because, as a matter of law, Mars could not meet its burden of proof for a permanent injunction where neither the Township nor the Borough acted outside the authority granted under the applicable Codes, and Act 45 did not preempt or conflict with that authority. Accordingly, we affirm.

### ORDER

AND NOW, this 7th day of January, 1998, the order of the Court of Common Pleas of Butler County, dated April 11, 1997, is hereby affirmed.

---

**9.** In making its claim, Mars EMS, like the provider in *Community Life*, relies on several provisions of Act 45; specifically, sections 2(a), 4(4), 5(a) and 5(b)(1), 35 P.S. §§ 6922(a), 6924(4), 6925(a) and 6925(b)(1). However, none of these provisions requires the Department to designate which provider will be dispatched when more than one qualified emergency medical service provider is available.