EMERGYCARE, INC., a Pennsylvania non-profit corporation; Gary M. Calabrese, an individual; and Mary Jackson, an individual

v.

**MILLCREEK TOWNSHIP,**
a Pennsylvania Municipal
Corporation, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 15, 2013.
Decided May 23, 2013.

Evan E. Adair, Solicitor, Erie, for appellant.

Joel M. Snavely, Erie, for appellees.

BEFORE: McGINLEY, Judge, McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Millcreek Township (Township) appeals from the October 24, 2011, order of the Court of Common Pleas of Erie County (trial court) that permanently enjoined the Township from enforcing Township Ordinance No.2010–3 (Ordinance). We affirm.

On April 27, 2010, the Township Board of Supervisors (Supervisors) enacted the Ordinance, which requires individuals seeking emergency medical services (EMS) to dial 911, bans advertising of 911 alternatives, prevents undesignated entities from providing EMS, and prescribes fines for engaging in these prohibited activities.[1] Pursuant to the Ordinance, the

---

1. The Ordinance states, in relevant part:
   1.06. Provision of Emergency Services by Others.
   1.06.1 Excepting only dispatch authorized by a provider designated by the Board of Supervisors in a mutual aid situation, no person, entity or organization other than those *expressly designated* by the Board of Supervisors shall provide police protection, fire protection and/or emergency medical services within the boundaries of Millcreek Township.

   1.06.2 Any provider of police protection, fire protection or emergency medical services which is not designated by the Board of Supervisors or a fire department having territorial responsibility to provide such services within Millcreek Township which receives a call for provision of such service(s) shall immediately transfer such call to the E–911.
   1.07. Unlawful Acts; Violations of Ordinance.

Supervisors expressly designated Millcreek Paramedic Service (MPS) as the provider of EMS in the Township. (N.T., 5/6/10, at 19–21.)

EmergyCare, Inc. (EmergyCare) has been providing EMS for 25 years. EmergyCare offers a yearly subscription to Township residents, under which EmergyCare provides medical care and transportation while paying the balance of an individual's financial responsibility after all insurance benefits have been billed and collected. EmergyCare operates an "870–1000" telephone number (alternative number) and encourages citizens to call the alternative number instead of 911.[2] Between 2007 and 2009, EmergyCare received between 3,000 and 4,000 calls annually from Township residents generating around $1 million in annual revenue.

The Ordinance became effective on May 3, 2010. That same day, EmergyCare, Gary M. Calabrese, and Mary Jackson[3] filed a complaint in the trial court seeking a preliminary injunction declaring the Ordinance null and void. The trial court issued an order suspending the Ordinance pending disposition of the preliminary injunction hearing. The trial court held a hearing on May 6, 2010, that both parties attended. After the hearing, the trial court issued a preliminary injunction.

On October 24, 2011, the trial court issued an order permanently enjoining the Township from enforcing the Ordinance. On November 21, 2011, the Township appealed to this court.[4]

1.07.1 It shall be unlawful and a violation of this Ordinance for any person or entity to advertise or advocate use of a telephone number other than 9–1–1 to request provision within Millcreek Township of emergency services.
1.07.2 It shall be unlawful and a violation of this Ordinance for any person or entity to advertise, in any manner, availability by that person or entity of police protection, fire protection and/or basic life support and/or advanced life support emergency medical services within the Township of Millcreek unless that person or entity is designated by the Board of Supervisors as the provider of such service.
1.07.3 It shall be unlawful and a violation of this Ordinance for any person or entity to call a telephone number other than 9–1–1 or otherwise to evade the E–911 system in requesting provision of police protection, fire protection, emergency medical services and/or basic life support and/or advanced life support ambulance services of any person from a location within the boundaries of Millcreek Township to any hospital, emergency department, surgery center, trauma center or like facility.
1.07.4 It shall be unlawful and a violation of this Ordinance for any person or entity to dispatch police protection, fire protection and/or emergency medical service providers other than those designated by Millcreek Township or the fire department having territorial responsibility in response to a 9–1–1 call, other than in a mutual aid situation or on request of a designated provider.
1.07.5 It shall be unlawful for any person, entity or organization which is not designated by the Board of Supervisors as a provider to provide police protection, fire protection and/or emergency medical services within the boundaries of Millcreek Township other than in mutual aid situations and other circumstances expressly authorized above in this Ordinance.
(emphasis added). Section 1.08 of the Ordinance prescribes the fines for these violations.

2. When an individual in the Township calls 911, EmergyCare receives notification only if the Township's paramedic service cannot respond. When an individual calls the alternative number, the Township's dispatch center is notified only if EmergyCare lacks an ambulance to dispatch.

3. Jackson and Calabrese are EmergyCare subscribers living in Erie County.

4. "In reviewing a grant or denial of a permanent injunction, which 'will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law,' our standard of review for a question of law is *de*

■ First, the Township argues that the trial court erred in declaring that the Ordinance violates the United States Constitution and the Pennsylvania Constitution.[5] We disagree.

We begin by noting that we previously addressed a similar ordinance designating a primary EMS provider in *Mars Emergency Medical Services, Inc. v. Township of Adams,* 704 A.2d 1143, 1145 (Pa. Cmwlth.1998), *affirmed in part, remanded in part,* 559 Pa. 309, 740 A.2d 193 (1999). In *Mars,* we held that the Emergency Medical Services Act (EMSA)[6] did not prohibit local involvement in the regulation of EMS and actually encouraged local involvement.[7] *Id.* at 1147.

■ Moreover, The Second Class Township Code (Township Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701, provides the authority for a township to pass an ordinance designating a primary EMS provider. *See* Section 1527 of the Township Code, 53 P.S. § 66527 (providing township supervisors with authority to adopt ordinances to secure the safety of persons within the township); Section 1528 of the Township Code, 53 P.S. § 66528 (granting township supervisors the power to contract for and appropriate money toward ambulance and life-saving services); *Mars,* 704 A.2d at 1148.

Therefore, the Township's authority to enact such an ordinance is not in question. However, unlike the ordinance in *Mars,* which designated a primary EMS provider, the Ordinance here, which authorizes the Supervisors to expressly designate an EMS provider, effectively excludes all other EMS providers. Additionally, the Ordinance bans alternative numbers to 911, prohibits advertising of alternatives, and imposes fines for engaging in this prohibited activity.

The United States Constitution states that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10. The Pennsylvania Constitution provides similar protection. Pa. Const. art. I, § 17 ("No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.").

■ "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kansas Power and Light Company,* 459 U.S. 400, 410, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (citation omitted).

---

novo, and our scope of review is plenary."
*Penn Square General Corporation v. County of Lancaster,* 936 A.2d 158, 167 n. 7 (Pa.Cmwlth. 2007) (citation omitted).

5. In *Association of Settlement Companies v. Department of Banking,* 977 A.2d 1257, 1261 (Pa.Cmwlth.2009) (citations omitted), this court stated:

Our law provides a strong presumption that legislative enactments, as well as the manner in which legislation is enacted, do not violate the Constitution. A party that challenges the constitutionality of a statute bears "a very heavy burden of persuasion" to overcome this presumption. "Accord-

ingly, a statute will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the Constitution [and a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster."

6. Act of July 3, 1985, P.L. 164, *as amended, formerly* 35 P.S. §§ 6921–6938, *repealed by* the Act of August 18, 2009, P.L. 308.

7. While the General Assembly subsequently passed the Emergency Medical Services System Act (EMSSA), Act of August 18, 2009, P.L. 308, 35 Pa.C.S. §§ 8101–8157, the reasoning of *Mars* also applies to the EMSSA.

If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem.... The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.

Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption."

*Id.* at 411–12, 103 S.Ct. 697 (citations and footnote omitted).

EmergyCare has 2,200 existing contracts with Township residents. The Ordinance substantially impairs these contracts by criminalizing conduct that EmergyCare is contractually obligated to perform. EmergyCare also has retained 79% of its membership contracts from year to year over its 25–year history, evidencing the certainty of prospective contracts.

Thus, the Township must justify the Ordinance by offering a significant and legitimate public purpose; it cannot merely provide a benefit to special interests. While the Township claims that it enacted the Ordinance to protect public health, safety, and welfare, the Ordinance does not actually support this purpose. Nothing indicates that EmergyCare's alternative number caused confusion among residents or hindered efficient EMS provision. (*See* Trial Ct. Op. at 4–6.) Rather, we agree with the trial court that the Ordinance is primarily an effort to isolate a revenue stream and eliminate competition. (*See* Trial Ct. Op. at 10 ("The Ordinance blatantly attempts to eliminate any competition with MPS in providing emergency services without any regard for its impact on [Township] residents and businesses.")).

Moreover, the Ordinance must be "of a character appropriate to the public purpose justifying [the legislation's] adoption." *Energy Reserves Group*, 459 U.S. at 412, 103 S.Ct. 697. The Ordinance exceeds its justification by unnecessarily restricting protected commercial speech [8] and limiting citizens' choice of medical care.[9] Thus, the Ordinance unjustifiably impacts contracts and is unconstitutional.

■ The Township next argues that the trial court erred in entering an *ex parte* preliminary injunction because the Township did not receive notice prior to the issuance of the *ex parte* injunction. We disagree.

■ "A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held...." Pa. R.C.P. No. 1531(a). "[A]n ex parte injunction without notice to those enjoined and without any effort to invite or

---

8. The United States Constitution states that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Commercial speech receives protection if it promotes a lawful activity and is not misleading. *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557, 564, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

9. Pennsylvania regulations evidence a public policy in favor of patient choice. *See, e.g.,* 28 Pa.Code § 103.22 (listing a Patient's Bill of Rights in the Department of Health's regulations).

permit their participation in the proceedings is invalid." *Apple Storage Company v. Consumers Education and Protective Association,* 441 Pa. 309, 314, 272 A.2d 496, 498 (1971); *see also Commonwealth ex rel. Costa v. Boley,* 441 Pa. 495, 499–500, 272 A.2d 905, 908 (1971).

The trial court properly entered the preliminary injunction. The trial court held an *ex parte* hearing on May 3, 2010, the day after the Ordinance went into effect. At that time, EmergyCare did not know whether it could respond to EMS requests without violating the Ordinance. Given the potentially exigent circumstances, additional notice of the hearing was impractical and the potential for irreparable injury was evident. Moreover, the trial court held a full hearing, attended by both parties, three days later, on May 6, 2010. The Township had notice of the second hearing and attended.

 Also, the Township waived any objection to the preliminary injunction. Unlike the appellants in *Apple Storage* and *Boley,* who petitioned an appellate court for supersedeas immediately after the *ex parte* preliminary injunction issued, the Township waited 17 months before challenging the validity of the preliminary injunction. Therefore, the trial court did not err in entering the preliminary injunction.

Finally, the Township argues that the trial court erred in making unsupported findings that the Ordinance impacted alarm system companies and hindered non-emergency services.[10] However, these facts are not relevant to the dispositive issue of the Ordinance's unconstitutionality.

Accordingly, we affirm.

### ORDER

AND NOW, this *23rd* day of *May,* 2013, we hereby affirm the October 24, 2011, order of the Court of Common Pleas of Erie County.

---

10. Finding of Fact Number 60 states:
    The Court raised concerns about the Ordinance's applicability to home security systems such as ADT and Brinks. None of the Millcreek Township Supervisors adequately answered the Court's questions.

(Trial Ct. Op. at 6.) The trial court stated: "[I]f the Ordinance is permitted to remain in effect, EmergyCare would not be allowed to assist or provide backup to MPS in cases of multiple emergencies. . . ." (*Id.* at 12.)