# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Keith Bartelli, <br>            Appellant <br><br>            v. <br><br> Pennsylvania Department of Corrections, C.O. Ross (SCI Retreat), Superintendent Moonie (SCI Retreat), Michael Overmyer, Superintendent (SCI Forest), Major Conrad (SCI Forest), Major Ennis (SCI Forest), Captain Duncan (SCI Forest), Lt. Dickey (SCI Forest), Lt. Haggerty (SCI Forest), Unit Manager Crowther (SCI Forest), C.O. Reed (SCI Forest), C.O. Menteer (SCI Forest), C.O. Rittenhouse (SCI Forest), Sgt. Montour (SCI Forest), Restricted Housing Unit Commander Gill (SCI Forest), Unit Manager Best (SCI Forest), Sgt. Fry (SCI Forest), C.O. Potter (SCI Forest), C.O. Lesko (SCI Forest), C.O. Best (SCI Forest), C.O. Baumcratz (SCI Forest), C.O. Drum (SCI Forest), C.O. Moore (SCI Forest) | No. 160 C.D. 2023 <br> Submitted: March 8, 2024 |

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge <br>                  **HONORABLE ELLEN CEISLER,** Judge <br>                  **HONORABLE MATTHEW S. WOLF,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY** <br> **PRESIDENT JUDGE COHN JUBELIRER**       **FILED: April 10, 2024**

Keith Bartelli (Appellant) appeals from the Order of the Court of Common Pleas of the 37th Judicial District (Forest County Branch) (common pleas) granting the Motion for Judgment on the Pleadings of the Pennsylvania Department of Corrections (DOC) and various DOC employees[1] (collectively, Appellees), and entering judgment in favor of Appellees. Upon review, we affirm.

## I. BACKGROUND

Common pleas set forth the factual and procedural background as follows:

[Appellant, an inmate at State Correctional Institution (SCI) – Forest,] filed a civil complaint . . . on January 26, 2018. . . . The complaint included claims that concerned the destruction of legal documents and personal property between 2015 and 2019, [and alleged] intimidation and harassment, retaliation, negligence, and violations of due process.

[Specifically, Appellant] claimed that legal documents were removed or destroyed when he was temporarily transferred to SCI[-]Retreat in January 2016. He alleged that his cell was searched in retaliation when he returned to SCI[-]Forest in March 2016. A television, mirror, and legal document[s] went missing in May [] 2016. [Appellant] alleges that [30] envelopes and a number of legal documents went missing from his cell in February [] 2017. During a lockdown in July [] 2018, [Appellant] claims his cell was searched and legal documents were destroyed. [Appellant] claims that he was once put in a psychiatric cell and given misconducts in retaliation for filing a complaint.

The procedural history of this matter is considerably long. [Appellant] requested default judgment against [Appellees] on March 1, 2018. [Appellant] filed a Motion for Judg[]ment on the Pleadings on March 12, 2018. [Appellees] filed a motion to strike the default judgment on

---

[1] Common pleas' caption shows the named defendants as Corrections Officer (CO) Ross and Superintendent Mooney of the State Correctional Institution (SCI) Retreat, and Superintendent Michael Overmyer, Major Ennis, Major Conrad, Captain Duncan, Lieutenant Haggerty, Lieutenant Dickey, Unit Manager Crowther, and CO Reed, CO Menteer, CO Rittenhouse, and Sergeant Montour, of SCI – Forest. In addition, Restricted Housing Unit Commander Gill, Unit Manager Best, Sergeant Fry, CO Potter, CO Best, CO Lesko, CO Baumcratz, CO Drum, and CO Moore, all of SCI--Forest, appear in the Final Comprehensive Amended Complaint.

April 2, 2018. On April 11, 2018, [Appellant] filed a Motion for Preliminary Injunction and Temporary Restraining Order against [Appellees]. [Appellant] filed a Motion in Opposition to [Appellees'] Motion to Strike Default Judg[]ment on April 12, 2018. [Common pleas] granted [Appellees'] Motion to Strike Default Judg[]ment and denied [Appellant]'s Motion for Preliminary Injunction and Temporary Restraining Order on April 16, 2018, as [Appellant] did not properly serve [Appellees] with service of process.

[Appellant] continued to file motions, [among them, a Motion to Reinstate Default Judgment on September 4, 2018, (Docket No. 71.),] but on September 6, 2018, [common pleas] ordered that it would take no further action on this matter until [Appellees were] properly served. . . . [Appellant] continued to file motions before serving process on [Appellees]. . . . [Common pleas] denied [several] motions[, including a praecipe seeking default judgment again on December 6, 2018, [(Docket No. 117.)] in a January 3, 2019 order[,] as [] [Appellant] had still failed to serve process on [Appellees].

[Appellees] filed Preliminary Objections to [Appellant]'s Supplemental/Amended Complaint on February 13, 2019.[2] [Appellant] filed an Objection to Defendants' Preliminary Objections to [Appellant]'s Supplemental/Amended Complaint on March 4, 2019. On March 14, 2019, [Appellant] filed a Motion for Objection to Defendants' Motion to Strike Default Judgment Nunc Pro Tunc. On March 26, 2019, [common pleas] once again ordered that no further action would be taken on this matter unless [Appellees were] properly served.

On April 4, 2019, [Appellant] filed another default judgment, [along with several other motions.] [Common pleas] struck [any] default judgments in this case in an April 17, 2019 order. [It] also directed the Forest County Prothonotary [(Prothonotary)] not to enter any judgment in this matter until further notice from the [c]ourt. . . .

On November 18, 2019, [Appellant] . . . reinstated his [C]omplaint and had the sheriff serve [Appellees] with service of process [and filed several additional motions]. . . . [Appellees] filed Preliminary Objections to [Appellant's] Complaint and Supplemental/Amended

---

[2] Plaintiff sought leave to amend his complaint to add additional defendants on October 12, 2018, and filed two pleadings styled as "Supplement/Amended Complaint," one on December 6, 2018, and reinstated on November 19, 2019, and the other filed October 4, 2019, and reinstated November 19, 2019. (Docket Nos. 216-217.)

Complaints on December 26, 2019. [After several intervening filings by Appellant, common pleas held] a hearing on [Appellees'] Preliminary Objections on April 23, 2020, [after which common pleas] granted the preliminary objections except the objection concerning whether [Appellant] was an abusive litigator.

[Appellant] filed his Final Comprehensive Amended Complaint on July 20, 2020. . . . [Appellees] filed an Answer and New Matter to [Appellant]'s Final Comprehensive Amended Complaint on November 23, 2020. [Appellant then filed several discovery requests between December 2020 and March 2021.]

. . . .

[Common pleas] entered a case management order stating the dates for discovery, all pretrial motions, and all responses. [Appellees] filed a Motion for Judgment on the Pleadings on March 29, 2021. [Appellant] filed an Objection to [Appellees'] Motion for Judgment on the Pleadings on May 28, 2021. [Several other motions followed.]

. . . .

After a hearing on September [21], 2022, [common pleas] granted [Appellees'] Motion for Judgment on the Pleadings. [It] determined that [Appellant]'s trespass, conversion, harassment, and intimidation claims were barred by sovereign immunity as they are intentional torts. [It] rejected the retaliation claim as the allegations in the [C]omplaint did not support the elements of retaliation. [Appellant]'s Fourteenth Amendment [D]ue [P]rocess claim[, U.S. CONST. amend. XIV, § 1,] was without merit[,] as [Appellant] had access to the grievance process. The Section 1983[, 42 U.S.C. § 1983,] claim failed because [Appellees] are immune from claims where they were acting in their official capacities. [Appellant's] negligence claim was insufficient as most of the alleged conduct was intentional. Judgment was entered in favor of [Appellees and] against [Appellant] on all counts of his Final Comprehensive Amended Complaint.

. . . .

(Common Pleas Opinion (Op.) at 1-6.)

Appellant timely appealed to this Court.[3] In his Concise Statement of Errors Complained of on Appeal (Concise Statement), which common pleas directed Appellant to file pursuant to Pennsylvania Rule (Rule) of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), Appellant raised the following issues, which we have reordered and consolidated for ease of discussion:[4] (i) whether common pleas erred in striking entry of default judgment based on its erroneous view that Appellees had not been properly served, as Appellant maintains that he had properly served Appellees in 2018; (ii) whether common pleas demonstrated partiality and erred by declining to compel discovery; (iii) whether Appellees violated discovery rules and

[3] We explained in our March 30, 2023 Order that "Appellant [] filed his Notice of Appeal in [common pleas] on January 27, 2023. However, Appellant incorrectly filed his Notice of Appeal in this Court on October 21, 2022, with a postmark of October 18, 2022." (Order, 3/30/23.) Therefore, consistent with Pennsylvania Rule of Appellate Procedure 905(a)(4), we directed the Prothonotary to reflect an October 18, 2022 file date for the Notice of Appeal. *See* Pa.R.A.P. 905(a)(4) (where a notice of appeal is erroneously filed in the appellate court and not common pleas, "the notice of appeal shall be deemed filed in the trial court on the date originally filed" in the appellate court).

[4] Although discussed in his brief, Appellant did not raise the issue of common pleas' denial of his request for preliminary injunctive relief. Rule 1925(b)(4) requires, *inter alia*, that an appellant point to the specific rulings the appellant intends to challenge, and Appellant did not challenge common pleas' ruling on his request for preliminary injunctive relief. Accordingly, consistent with Rule 1925(b)(4)(vii), Appellant has waived this issue. However, even if he had preserved the issue in his Concise Statement, we would still be unable to grant any relief. Indeed, as a general matter, the grant or denial of a preliminary injunction is immediately appealable as of right, given the law's recognition of the harms that can flow from erroneous decisions on preliminary injunctive relief. Pennsylvania Rule of Appellate Procedure 311(a)(4), Pa.R.A.P. 311(a)(4). When a party aggrieved by a court's ruling on a preliminary injunction, instead of immediately appealing as of right, waited more than a year, we found the issue waived. *EmergyCare, Inc. v. Millcreek Township*, 68 A.3d 1, 6 (Pa. Cmwlth. 2013). What is more, to the extent Appellant predicated his request for preliminary injunction on the likelihood of imminent danger at the time he filed the request, we also conclude that issue is moot because this Court could no longer provide any immediate relief with respect to those allegations. *See, e.g.*, *Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Gen. Warehousemen & Emps. Union Local 636 v. Borough of West Mifflin*, 411 A.2d 261, 262 (Pa. Cmwlth. 1980) (declining to address propriety of granting of preliminary injunctive relief where the underlying allegedly wrongful conduct had resolved).

5

the rule established in *Brady v. Maryland*, 373 U.S. 83 (1963); (iv) whether common pleas further displayed bias by denying Appellant's request for unredacted transcripts, and; (v) whether common pleas violated Appellant's constitutional rights and failed to abide by Pennsylvania Rule of Civil Procedure 126, Pa.R.Civ.P. 126, by not behaving impartially.[5] (Concise Statement at 1-3, Docket No. 429.)[6]

In its Rule 1925(a) Opinion, common pleas began its analysis of the issues by noting it was "not in a position to respond" to Appellant's "Equal Protection or Due Process claims as these allegations are vague[,]" relying on *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review."). (Common Pleas Op. at 7.) Next, it reasoned that any issues relating to improper service of the first Complaint were moot because it had given Appellant "the opportunity to file a second amended complaint, which **was** timely served on [Appellees]." (*Id.* at 8

---

[5] Appellees argue in their brief that Appellant has waived any issues related to the substance of common pleas' disposition of Appellant's Motion for Judgment on the Pleadings. Of course, on appeal, Appellant can raise the issues he deems proper. On appeal here, Appellant limited the issues to those stated above. Further, Appellant styled the constitutional issue common pleas felt it could not address in the following way: "Appellant . . . has not been afforded the fundamental constitutional rights of equal protection, due process, and impartiality **by the trial judge and court**." (Concise Statement ¶ 1 (emphasis added).) Appellant connects any constitutional claim to common pleas' **handling** of his case, **not** to the underlying alleged constitutional violations on the part of Appellees. Indeed, Appellant does not advance claims related to the underlying merits of the Motion for Judgment on the Pleadings in his brief, either, also focusing there on procedural issues and allegations of lack of impartiality at the common pleas level. (Appellant's Br. at ix.) Therefore, we agree with Appellees insofar as they suggest that Appellant, through his Concise Statement, has necessarily limited his issues on appeal to issues outside the substantive merits of common pleas' grant of Appellees' Motion for Judgment on the Pleadings. However, believing that Appellant's constitutional claim with respect to the handling of his case at the common pleas level was adequately preserved in the Concise Statement, we do reach that issue *infra*.

[6] On the docket sheet, common pleas renumbered items via handwritten item numbers. We refer exclusively to the original docket numbers, as they appear on the docket sheet, throughout the opinion.

(emphasis added).) Regarding Appellant's contention that the court held Appellant to a higher standard than necessary in violation of Rule 126, the court reiterated that it gave Appellant "the opportunity to file a consolidated second amended complaint and held a hearing on the merits." (*Id.*) It further rejected the suggestion that it had demonstrated partiality with respect to its handling of discovery motions, pointing out that any discovery motions prior to November 2019 were properly denied due to lack of service, and that Appellant never filed a motion to compel after entry of the case management order in 2021. Finally, the court rejected the allegation that there had been a *Brady* violation, noting that *Brady* violations can only arise in criminal prosecutions, not civil matters. It also reasoned any objection to its denial of Appellant's request for transcripts was moot.

## II. DISCUSSION

### A. *Default Judgment and Service of Process*

We first consider Appellant's argument that common pleas erred in striking the default judgments. He contends that when he sent the writ of summons to the Prothonotary, it was the Prothonotary's duty to make sure the sheriff received the writ of summons and served the requested parties. Appellant asserts there was a breakdown in court operations in that the Prothonotary failed to forward Appellant's writ of summons to the sheriff, citing *Hill v. Thorne*, 635 A.2d 186, 188 (Pa. Super. 1993) ("We have held that untoward circumstances, such as interference by a third party which prevents delivery of process to the sheriff, can excuse a plaintiff from the strictures of Rule 400[ of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 400]."). Further, he argues Appellees' "counsel entered his appearance, clearly indicating [Appellees' attorney] had first[]hand knowledge of an action against

7

[Appellees] and that there had been a[n] action commenced against them, without any prejudice against" Appellees. (Appellant's Br. at 8.) He also argues the judge displayed partiality by ignoring Appellant's filings while the court awaited proper service to be made on Appellees. Appellant argues that under Rule 1026 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 1026, Appellees had 20 days to respond, and their failure to do so led to the proper entry of a default judgment. (*Id.* at 11.) Further, Appellant asserts that he properly served at least one defendant via hand-delivery, allowable under Rule 402(b) of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 402(b).

For their part, Appellees contend that because Appellant named Commonwealth parties as defined by 42 Pa.C.S. § 8501 in this action, it was necessary for Appellant to serve the Attorney General. Because, in Appellees' view, the Attorney General had not been served by the time of any default judgment, common pleas lacked jurisdiction to enter default judgment in the first instance and was without discretion to decline to strike the default judgment.

We begin with an overview of the default judgment process under our Rules of Civil Procedure. First, Rule 1026 requires a responsive pleading within 20 days after **service** of a notice to plead. Pa.R.Civ.P. 1026(a) (emphasis added). Rule 1026(a) connects with Pennsylvania Rule of Civil Procedure 1037(b), which authorizes, upon praecipe of a plaintiff, a prothonotary to enter a default judgment against the defendant if the defendant fails to file a responsive pleading in accordance with Rule 1026. Pa.R.Civ.P. 1037(b). If a default judgment is entered pursuant to Rule 1037(b), the court must strike it where a "fatal defect appears on the face of the record" suggesting the default judgment was entered in error. *Kreidie v. Dep't of Revenue*, 156 A.3d 380, 383 (Pa. Cmwlth. 2017). Therefore, under Rule

8

1037(b), to know whether a default judgment was entered properly, we must know if there was proper service, and whether a responsive pleading was filed because if service was not proper, or if a responsive pleading was filed, those defects would be apparent on the face of the record.

Proper service is essential because it is one way a court obtains personal jurisdiction over a defendant. Our Supreme Court has explained that

> [s]ervice of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed. **Without valid service, a court lacks personal jurisdiction [over] a defendant and is powerless to enter judgment against him or her.** Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action against him or her.

*Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 700 A.2d 915, 917-918 (Pa. 1997) (citations omitted) (emphasis added).[7]

To determine specifically whether service upon a Commonwealth party was proper, we also need to know whether there was service upon the Attorney General. A Commonwealth party is "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. Section 8523 of the Judicial Code requires service be made on the Attorney General's office in actions against the Commonwealth. 42 Pa.C.S. § 8523. Pennsylvania Rule of Civil Procedure 422(a) requires the same and also specifically provides that service "shall be made at the office of the . . . attorney general **by handing a copy to the person in charge** . . . ." Pa.R.Civ.P. 422(a) (emphasis added). Service by mail is available only in specific, limited scenarios under our

---

[7] Of course, we read this in the broader context of Pennsylvania's personal jurisdiction jurisprudence and recognize that service of process is **one** way for personal jurisdiction to attach. Consent and waiver are two additional ways. *Commonwealth v. Stewart*, 543 A.2d 572, 574 (Pa. Super. 1988).

Rules. *See* Explanatory Comment preceding Rule 400 (explaining service by mail is only available for parties outside the Commonwealth and in certain domestic relations matters). While the record shows that Appellant attempted service by certified mail on January 30, 2019, (Docket No. 148), that is not proper service under Rule 422(a), as Rule 422(a) does not authorize service by mail.

We have said that the failure to serve the Attorney General "cannot be overlooked and cannot be excused, and the failure . . . to serve the Attorney General renders . . . service on" a Commonwealth party "defective and deprive[s] the trial court of [personal] jurisdiction" over a Commonwealth party. *Kreidie*, 156 A.3d at 383-84 (internal citations and quotation marks omitted). Indeed, we have described service on the Attorney General as "an **absolute prerequisite** to the entry of a default judgment." *Mazur v. Cuthbert*, 186 A.3d 490, 496 (Pa. Cmwlth. 2018) (emphasis added). At bottom, the "failure to serve the Attorney General is a fatal defect appearing on the face of the record" such that, if at the time default judgment against a Commonwealth party is entered, "the prothonotary lack[s] power to enter a default judgment." *Kreidie*, 156 A.3d at 384 (internal citation and quotation marks omitted).

That law in mind, we first agree with Appellees that they are Commonwealth parties, as each is either a Commonwealth agency (DOC), or an employee of DOC, such that Appellant was required to comply with Rule 422. Further, we agree with common pleas' logic in granting judgment for Appellees confirms the allegations at issue here are directed at the named employees for acts committed in the scope of their employment with the DOC. (Common Pleas Op. at 5.) Therefore, because this lawsuit focuses on actions on the part of Appellees allegedly having occurred in the

10

course and scope of their employment, Appellant needed to comply with Rule 422's service requirements.

In addition, our review of the record reveals that service on the Attorney General did not occur until April 12, 2019. (*See* Return of Service, 4/12/19, Docket Entry No. 179.) *See County of Allegheny v. McCullough*, 659 A.2d 40, 43 (Pa. Cmwlth. 1995) ("[O]ur courts have long followed the rule that, without fraud, the return of service of a sheriff, which is complete on its face, is conclusive . . . ."). Because Rule 422(a) requires service by handing a copy to the person in charge, neither an affidavit of service[8] nor a certified mail receipt is effective to show definitively that the Attorney General was properly served. We also emphasize that it is of no moment whether other individuals had been served by April 12, 2019, as any service as to a Commonwealth party was not effective until the Attorney General was **properly** served. *Kreidie*, 156 A.3d at 384.

Appellant filed praecipes for default judgment on March 1, 2018, (Docket Entry Nos. 11, 13), December 6, 2018, (Docket Entry Nos. 117-18), February 19, 2019 (Docket Entry No. 153), and April 4, 2019 (Docket No. 172.) At any of those times, it would have been apparent on the face of the record that there was a fatal defect because there was no return of service showing the Attorney General had been properly served. Further, when common pleas entered its April 17, 2019 order striking all default judgments and directing the Prothonotary not to enter any more, it was still clear on the face of the record that any default judgment entered up to that point would have been in error, as 20 days had not yet passed since the Attorney General had been served, such that Appellees would not have been out of compliance

---

[8] An affidavit of service indicating personal service on the Attorney General's office would also be effective to show proper service, but here, that is impossible given that Appellant is incarcerated.

11

with Rule 1026, a predicate for entry of a default judgment under Rule 1037. (Docket No. 117.) However, even if the Attorney General had been served by April 12, 2019, it would still have been inappropriate for the Prothonotary to enter default judgment, **as Appellees had already filed a responsive pleading in February 2019**. (Docket Entry No. 150.) Accordingly, there was a fatal defect on the face of the record at each time the Prothonotary entered any default judgment; therefore, common pleas did not err in striking each.[9]

Finally, we agree with common pleas that any remaining issues relating to service of process are moot. We have explained that an

> intervening change in the factual landscape of a case can render a party's injury incapable of redress by a favorable judicial decision. . . . Thus, the critical inquiry in determining whether a[n issue] has become moot is whether the court's decision could, in substance, accord the injured party relief.

*Toland v. Pa. Bd. of Prob. & Parole*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 315 M.D. 2018, filed Feb. 14, 2024), slip op. at 8 (internal citation and quotation marks omitted). In addition, the filing of an amended complaint "is virtually a withdrawal of the first[.]" *Reichert v. TRW, Inc.*, 611 A.2d 1191, 1194 (Pa. 1992) (quoting *Kay v. Fredrigal*, 3 Pa. 221, 223 (1846)). *See also Brooks v. B & R Touring Co.*, 939 A.2d 398, 402 (Pa. Super. 2007) (noting that "fil[ing of] an amended complaint . . . render[s] the original complaint a virtual nullity.").[10]

Here, there is no question that all Appellees were ultimately served with the Final Comprehensive Amended Complaint in July 2020, (Docket No. 282), and that

---

[9] Given our conclusion that default judgment was never properly entered, we must necessarily reject Appellant's assertion that the hearing on the Motion for Judgment on the Pleadings was "illegal." (Appellant's Br. at 19.)

[10] While not binding on this Court, we often cite Superior Court opinions for their persuasive value. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Appellant's claims were ultimately decided on the merits after the parties had the opportunity to be heard on Appellees' Motion for Judgment on the Pleadings, (*see* Common Pleas Order 9/26/22; Hr'g Tr. 9/21/22 at 37). At this point, a favorable judicial decision as to this issue could do nothing to correct an alleged breakdown in communication between the Prothonotary and the Sheriff. What is more, the filing of the Final Comprehensive Amended Complaint was, in substance, a withdrawal of the previous complaints, so Appellant is foreclosed from challenging anything related to those previous complaints. *Reichert*, 611 A.2d at 1193.

Given that this Court can accord no meaningful relief, and any complaint filed prior to 2020 was effectively withdrawn, we must also reject Appellant's argument on this point, to the extent our analysis of the default judgment issue did not already address it.

### B. Discovery

Appellant argues generally that common pleas erred in its handling of various discovery motions[11] at several points throughout the litigation, including in refusing to compel discovery of a video that Appellant alleges would corroborate personal service upon one of the Appellees.

First, consistent with our logic above, any objection to common pleas' handling of discovery issues is moot. To understand why, it is essential to

---

[11] We review a court of common pleas' handling of discovery matters for an abuse of discretion, *McNeil v. Jordan*, 894 A.2d 1260, 1268 (Pa. 2006), given the broad discretion trial courts enjoy with respect to handling discovery, *Toland*, ___ A.3d at ___, slip op. at 32. "We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Constr., Inc.*, 658 A.2d 341, 343 (Pa. 1995).

understand the nature of a court's grant of motion for judgment on the pleadings. Our Supreme Court has recently reiterated that

> the same principles apply to a judgment on the pleadings as apply to a preliminary objection in the nature of a demurrer. The facts pleaded in the complaint are taken as true, along with all inferences reasonably deducible from those facts; the court should grant judgment in the defendant's favor only where the law says with certainty that no recovery is possible[.]

*Klar v. Dairy Farmers of Am., Inc.*, 300 A.3d 361, 369 n.34 (Pa. 2023) (citation and quotation marks omitted). Therefore, common pleas, in applying that standard of review, is well within its discretion in refusing to allow any discovery to proceed at all, where that standard requires entry of judgment **only** where the facts as pleaded in the complaint, taken as true, are considered.[12] Put simply, the grant of a motion for judgment on the pleadings is an implicit recognition that **no** discovery will ever be needed, and that a complaint has failed as a matter of law.[13] Indeed, this Court has found no error in a common pleas court's stay of discovery pending disposition of preliminary objections. In that context, we explained: "[T]he interests of justice [are] served by permitting . . . defendants the opportunity to show that the claims raised in [a c]omplaint failed to state a cause of action **before** burdening them with discovery demands." *Luckett v. Blaine*, 850 A.2d 811, 818 (Pa. Cmwlth. 2004), *abrogated on other grounds by Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269 (Pa. Cmwlth. 2021) (emphasis added). Finally, we agree with common pleas that the United States Supreme Court's holding in *Brady* is necessarily limited to criminal proceedings, and not the instant civil matter. *See, e.g.*, *Commonwealth v. Holt*, 273

---

[12] Notably, while common pleas had no obligation to permit discovery, it did issue a case management order permitting discovery generally. (Docket No. 329-30.)

[13] We reiterate that, in selecting the issues to appeal, Appellant did not choose to challenge common pleas' disposition of the underlying merits of the Complaint.

A.3d 514, 534 (Pa. 2022) (setting forth the elements of a *Brady* claim, which only apply in criminal proceedings).[14]  Therefore, because any objections to common pleas' handling of discovery are moot based on the procedural posture of this case, and because *Brady* does not apply here, we discern no abuse of discretion in common pleas' handling of discovery in this matter.

### C. Transcript Request

Appellant asserts that common pleas demonstrated bias by denying his request for transcripts in December 2022.  Common pleas denied the request initially due to its belief that no notice of appeal had been timely filed.  (Docket No. 412.)  However, after recognizing that a notice of appeal had been filed, it proceeded appropriately by directing the Concise Statement.  (Docket Nos. 416-419.)  In this Court, Appellant filed an Objection to Filed Transcripts on November 23, 2022, lodging an objection to the "transcripts . . . prov[]ided **and received** . . . relating to the hearing" on the Motion for Judgment on the Pleadings  (emphasis added).  Therefore, by Appellant's own admission, it appears he has in his possession the transcript of the proceeding, which common pleas explained was "complete and accurate." (Common Pleas Op. at 9.)  Because it appears that Appellant received a transcript of the proceedings, we agree with common pleas that this issue is also moot.

---

[14] "In *Brady*, the United States Supreme Court held that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good or bad faith of the prosecution.'" *Holt*, 273 A.3d at 534 (quoting *Brady*, 373 U.S. at 87).

15

### D. Impartiality and Rule 126

Appellant maintains in his brief that common pleas failed to act in an impartial manner throughout the proceedings, specifically alleging that the judge did not adhere to the requirement of liberal construction of Rule 126, and that the judge exhibited partiality toward the defense.[15] He argues this amounted to a constitutional violation. In addition, Appellant maintains that common pleas and Prothonotary, in an effort to "cause [A]ppellant prejudice" and to thwart his "ability to timely file an[y] responsive pleadings, answers, [or] objections" has deliberately caused mail to be re-routed. (Appellant's Br. at 18-19.)

We begin with Appellant's allegation of impartiality. Of course

> a fair tribunal is a basic requirement of due process. . . . [A] litigant's due process rights are violated when the circumstances of a judicial decision g[i]ve rise to an unacceptable risk of actual bias. . . . Moreover, the appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as the actual presence of bias or prejudice. . . . However, **simply because a judge rules against a defendant does not establish any bias on the part of the judge against that [complaining party]**.

*Commonwealth v. McCauley*, 199 A.3d 947, 950-51 (Pa. Super. 2018) (internal citations and quotation marks omitted) (emphasis added). Typically, a party suspecting partiality on the part of a judge must seek recusal or disqualification of that judge at the earliest possible opportunity; failure to do so may result in waiver of that issue. *In re Lokuta*, 11 A.3d 427, 437 (Pa. 2011). *But see In re D.J.B.*, 230 A.3d 379, 385 (Pa. Super. 2020) (declining to find waiver despite the appellant not raising the issue of impartiality until filing of a concise statement per Rule 1925(b)).

---

[15] Our review with respect to whether a judge should have been disqualified or recused for impartiality or an appearance of impartiality is limited to determining whether there was an abuse of discretion. *Commonwealth v. Darush*, 459 A.2d 727, 731 (Pa. 1983).

The record here does not show that Appellant sought any relief as to this issue before common pleas.[16] However, taking the *D.J.B.* Court's cue, we will assume that Appellant has not waived this issue. We observe that Appellant has not pointed to any **specific conduct** on the part of the common pleas judge that would raise questions about his partiality throughout the proceedings, and we locate nothing in the record suggestive of any such conduct. Appellant consistently connects his bias and impartiality arguments with his general dissatisfaction with common pleas' rulings against him. He does not advance separate claims of bias. However, adverse rulings, without more, will not suffice to show bias or impartiality, *McCauley*, 199 A.3d at 951,[17] and what is more, as discussed above, we do not believe common pleas erred with respect to those rulings Appellant challenges on appeal.

---

[16] Although Appellant requested a change of venue on December 6, 2018, that filing refers to possible bias based on Appellees' connections in Forest County but does not raise any issues with respect to the common pleas judge's partiality. (Docket No. 120.)

[17] We find illustrative our Supreme Court's examples of instances of judicial conduct that rose to such a level to create an appearance of impropriety such that a new proceeding should be granted:

> In [*In re*] *McFall*[, 617 A.2d 707, 711-12 (Pa. 1992)], the sentencing judge agreed to serve as an agent for federal prosecutors after the prosecutors caught her accepting a bribe. This constituted an appearance of impropriety, as the judge was sentencing criminal defendants while seeking to curry favor with prosecutors. . . . In *Joseph* [*v. Scranton Times, L.P.*, 987 A.2d 633 (Pa. 2009)], [a corporation and its sole shareholder] sued a newspaper for defamation after it implied [the shareholder] was associated with a reputed mobster. [The president judge] was associated with, and accepted unmarked envelopes from this mobster; the mobster said the outcome of the case would be favorable to Joseph. [The president judge] assigned the case to [a judge], who failed to reveal to the parties that he and [the president judge] were receiving payoffs from [a local lawyer who routinely appeared before them]. We concluded these circumstances created an appearance of impropriety. . . . In *Malinowski* [*v. Nanticoke Micro Technologies, Inc.* (Pa., No. 51 MM 2009, filed June 24, 2010)], we ordered new proceedings in one of [a judge's] cases where [the president judge] was a board member of one of the

**(Footnote continued on next page…)**

17

We next address Appellant's related argument that common pleas demonstrated bias by declining to liberally construe Appellant's filings, which he reiterates throughout his brief. He suggests that the judge's lack of impartiality was revealed in his "hypertechnical[]" reading of Appellant's pro se filings. (Appellant's Br. at 8.) Rule 126(a) provides in relevant part that "court[s] at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantive rights of the parties." Pa.R.Civ.P. 126(a). We have explained that "pleadings filed by uncounseled or unrepresented litigants are to be construed liberally," being careful to recognize, however, that "an [uncounseled] litigant is not to be given any particular advantage because of his lack of knowledge of the law." *Young v. Est. of Young*, 138 A.3d 78, 87 (Pa. Cmwlth. 2016) (quoting *Mueller v. Pa. State Police Headquarters*, 532 A.2d 900, 902 (Pa. Cmwlth. 1987)).

Even a cursory review of the voluminous record in this case reveals that the common pleas judge considered Appellant's numerous filings and addressed them, which belies the notion that the judge declined to liberally construe Appellant's filings. After common pleas sustained Appellees' preliminary objections to Appellant's Amended/Supplemental Complaint, it granted Appellant leave to amend, providing yet another chance to state a claim and be heard on the merits of his claims. (Docket No. 274-75.)[18]

In his Concise Statement, Appellant suggests the common pleas judge "made it perfectly clear to Appellant that he **holds all litigants to the same standards as a learned attorney[]"** at the hearing on Appellees' Motion for Judgment on the

---

parties, and that party loaned money to an entity owned by [the judge's] and [president judge's] wives. . . .

*Lokuta*, 11 A.3d at 436 (some citations omitted).

[18] We also observe that the order filed October 26, 2021 in common pleas provided accommodations for Appellant to be able to fully participate. (Docket No. 374-75.)

18

Pleadings. (Concise Statement at 2 n.2.) At the hearing, the judge, immediately preceding his ruling on the record, explained:

> [U]ltimately, in a civil matter, even though you are pro se, and even though your access to law libraries, pens, paper, is limited because of your incarceration, I still have to hold you to the same **legal standards** as litigants with high[-]priced counsel representing them. . . . [O]nce the rubber hits the road, I have got to assess these **claims** the same ways as I would if they were filed by counsel, filed by an indigent party pro se, the legal standards are the same. So, it's not [that I'm] penalizing anybody for their circumstances. It's applying the same law to everybody in the same type of cases.

(Hr'g Tr. 9/21/22 at 32.) We see no error in common pleas explanation, as it comports with the principle, expressed in *Young*, that liberally construing a party's filings does not require the court to confer upon a pro se party an advantage, or hold that party to a lower standard with respect to the ultimate legal questions involved. Common pleas correctly recognized that liberal construction of a pro se party's pleadings or briefing does not mean common pleas must disregard its responsibility to fairly apply the governing substantive law.

In sum, beyond adverse rulings, Appellant has not pointed to anything in the record that would tend to raise the specter of bias or impropriety on the part of common pleas. Nor do we find that common pleas failed to adhere to Rule 126's command of liberal construction.[19]

---

[19] We see nothing in the record to suggest that the mail issues of which Appellant complains are anything more than, if anything, an administrative mistake which has certainly not prejudiced Appellant's ability to participate in this appeal. (*See* Judicial Notice, filed by Appellant 3/27/23 and 3/30/23.) Appellant was able to file his Concise Statement, common pleas was able to respond to it in an opinion, and Appellant was able to file a brief. Again, regardless of whether administrative errors caused delay, there can be no dispute that Appellant had the opportunity to fully participate in the litigation below and be heard.

## III. CONCLUSION

For all the foregoing reasons, we affirm.

 

 

 

 

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Bartelli,                                   :
                            Appellant             :
                                                  :
                v.                                :     No.  160 C.D. 2023
                                                  :
Pennsylvania Department of                        :
Corrections, C.O. Ross (SCI Retreat),             :
Superintendent Moonie (SCI Retreat),              :
Michael Overmyer, Superintendent                  :
(SCI Forest), Major Conrad (SCI                   :
Forest), Major Ennis (SCI Forest),                :
Captain Duncan (SCI Forest), Lt.                  :
Dickey (SCI Forest), Lt. Haggerty                 :
(SCI Forest), Unit Manager Crowther               :
(SCI Forest), C.O. Reed (SCI Forest),             :
C.O. Menteer (SCI Forest), C.O.                   :
Rittenhouse (SCI Forest), Sgt.                    :
Montour (SCI Forest), Restricted                  :
Housing Unit Commander Gill (SCI                  :
Forest), Unit Manager Best (SCI Forest), :
Sgt. Fry (SCI Forest), C.O. Potter (SCI           :
Forest), C.O. Lesko (SCI Forest), C.O.            :
Best (SCI Forest), C.O. Baumcratz (SCI :
Forest), C.O. Drum (SCI Forest), C.O.             :
Moore (SCI Forest)                                :


# **O R D E R**


**NOW**, April 10, 2024, the Order of Court of Common Pleas of the 37th Judicial District (Forest County Branch), entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge